**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABDUS SHAHID** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF EDDYSTONE** | : | **NO. 11-2501** |

**<u>MEMORANDUM OPINION</u>**

Savage, J.                                                               May 21, 2012

In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff Abdus Shahid alleges that the Borough of Eddystone ("the Borough") discriminated against him on the basis of his race, national origin and religion.  Specifically, he claims that the Borough deliberately prevented him from renting out and living at a property he owns because it did not want a Muslim from Bangladesh owning property in a "white area."  Shahid alleges that, as part of the Borough's discriminatory course of conduct, Borough officials fabricated a series of citations for violating municipal ordinances and caused Shahid to be convicted of those violations by lying in court.  The Borough moved for summary judgment, arguing that Shahid's entire complaint is barred by the *Heck* doctrine.[1]

If successful, Shahid's claim that his convictions were wrongfully obtained would directly undermine the validity of those convictions.  That claim is *Heck*-barred.  Although not raised by the Borough, the *Rooker-Feldman* doctrine also precludes Shahid's challenge to his convictions.  However, Shahid's other allegations against the Borough are factually and conceptually distinct from the issues litigated in state court.  Because those allegations

---

[1] The Supreme Court held in *Heck v. Humphrey* that a plaintiff cannot use § 1983 to collaterally attack the validity of a criminal conviction.  512 U.S. 477, 486-87 (1994).  If a successful § 1983 claim would demonstrate or imply the invalidity of a criminal conviction that has not been reversed on direct appeal or impaired by collateral proceedings, the claim is *Heck*-barred.  *Id.*

do not implicate his convictions, they are not barred by *Heck* or *Rooker-Feldman*.   Thus, we granted the motion in part and denied it in part.[2]

## Background[3]

Shahid, a U.S. citizen, was born in Bangladesh.   He is currently a resident of New York.   In January 2007, Shahid purchased a residential property in Eddystone, where he says he intended to live once he moved to Eddystone permanently.   In the meantime, Shahid has rented the building's first and second floors as separate apartments.

Shahid claims he rented one of the units to Joshua Taylor and his mother, whom Shahid identifies only as a Borough "tax director" or "high-ranking" official.   He alleges that Taylor and his mother lived at the property from May 30, 2007 until September 7, 2008, when Shahid threatened to evict them for being four months behind on the rent.   He claims that the tax director told him that the Borough would never allow a Muslim from Bangladesh to own or live in the property because it was located in a white area.

Shahid claims that the next day, September 8, 2008, Borough Code Official Dallas Walters came to the property to conduct an inspection.   He says that when he informed Walters that he intended to move to the property from New York, Walters responded that the Borough Council was aware that he was Muslim and Bangladeshi; that it was against Borough policy to allow such a person to live or own property in that area; that Walters was authorized to implement the Borough's discriminatory policy; and, that he would call the

---

[2] *See* Order, Apr. 26, 2012, Doc. No. 27.

[3] The recitation of the facts is based upon Shahid's presentation and all reasonable inferences are drawn in his favor.

police if Shahid returned to the building. Shahid alleges that Walters then posted notices reading "Keep Out, Uninhabitable" on the doors, windows, and walls of the property.

Shahid alleges that later, when he was performing maintenance work on the property, Walters appeared and threatened to call the police if he did not leave the premises. Shahid alleges that Walters came to the property several times to discourage prospective tenants from renting from him, telling approximately fourteen or fifteen persons not to rent the units. He also claims that some of those people relayed to him that Walters had told them that the Borough would not allow non-whites to own rental property in that area. He alleges that he was unable to rent the apartments after September 2008 because of the Borough's harassment.

On or around December 23, 2008, Walters gave Shahid a report listing numerous violations of Borough ordinances at the property. Claiming that previous and subsequent inspections revealed no code violations, Shahid alleges that Walters's report was fabricated. Shahid did not receive citations for any of the violations cited in the December 23, 2008 report.

In 2008, 2009 and 2010, Shahid was cited for renting his property without a certificate of occupancy in violation of the Borough Code. He was convicted of those offenses and his convictions were upheld on summary appeal before the Delaware County Court of Common Pleas.

Shahid admits that he has never obtained a certificate of occupancy to rent out the apartments. However, he alleges that, even though he properly applied for a certificate and paid the required fee, the Borough denied his application as part of its scheme to keep non-whites out. Specifically, he claims that Walters fabricated the December 23, 2008

inspection report to create a pretext for denying him a certificate, thereby preventing him from living in or renting out the property.

Shahid was convicted of three other Borough ordinance violations in 2010 and 2011 for failing to remove snow and for maintaining overgrown grass or weeds at the property. He was fined for each conviction, and his convictions were affirmed on appeal.

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not

4

lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## Discussion

Shahid alleges that, as part of the Borough's campaign to keep him out of the neighborhood, Walters and other Borough officials concocted a series of citations for violating Borough ordinances, including for renting a dwelling without a certificate of occupancy. Shahid was convicted of six of those violations in 2009, 2010 and 2011, and his convictions were affirmed on appeal before the Court of Common Pleas of Delaware County. He claims that he was convicted because Walters and the other officials supported the fabricated citations with false testimony in court.

### Heck v. Humphrey

The Borough argues that Shahid's entire complaint is barred by the Supreme Court's ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a plaintiff cannot bring a constitutional claim under § 1983 if a judgment in his favor would demonstrate or imply the invalidity of a criminal conviction that has not been reversed on direct appeal or impaired by collateral proceedings. *Id.* at 486-87; *see also Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *Gilles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005); *Torres v. Fauver*, 292 F.3d 141, 147 (3d Cir. 2002). The purpose of the *Heck* doctrine is to promote the "finality and consistency" of criminal convictions by avoiding "parallel litigation" and "the creation of two conflicting resolutions arising out of the same or identical transaction." *Heck*, 512. at 484-85 (citations omitted); *see also Gilles*, 427 F.3d at 209.

As a threshold matter, we must decide whether the *Heck* doctrine applies to

convictions for violating the Borough ordinances at issue. The Borough argues that it does, noting that a number of courts in the Third Circuit and elsewhere have applied *Heck* to bar § 1983 plaintiffs from challenging convictions under local ordinances. *See, e.g., Swiecicki v. Delgado*, 463 F.3d 489, 495 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007); *Ngoc-Chi Huynh v. City of Hous.*, No. 10-1303, 2011 WL 6250792, at *7 (S.D. Tex. Dec. 12, 2011); *Torres v. City of Laguna Niguel*, No. 07-736, 2009 WL 5184467, at *8 (C.D. Cal. Dec. 21, 2009); *Wade v. Colaner*, No. 06-3715, 2009 WL 776985, at *2 (D.N.J. Mar. 20, 2009); *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 790 (D.N.J. 2008); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 637 F. Supp. 2d 1002, 1007-09, 1019-20 (M.D. Fla. 2007); *Yeager v. City of San Diego*, No. 05-2089, 2007 WL 7032933, at *5-6 (S.D. Cal. June 1, 2007); *Acevedo v. City of O'Fallon*, No. 07-0859, 2007 WL 1541881, at *3 (E.D. Mo. May 24, 2007); *Cordova v. City of Reno*, 920 F. Supp. 135, 137 (D. Nev. 1996).[4] Most of these cases concerned charges or convictions for criminal offenses.[5] In Pennsylvania, violations of local ordinances are not crimes, but rather are civil infractions. *Town of McCandless v. Bellisario*, 709 A.2d 379, 381 (Pa. 1998); *In re Investigating Grand Jury*, 437 A.2d 1128, 1131-32 (Pa. 1981). Thus, we must

---

[4] Some courts have refused to apply *Heck* to violations of municipal ordinances. *See, e.g., Ways v. City of Lincoln*, No. 00-3216, 2002 WL 1742664, at *9-10 (D. Neb. July 29, 2002). However, they have done so not because of the nature of municipal ordinances, but rather because those courts have held that *Heck* does not apply when habeas relief is not available to challenge a conviction. *See Huftile v. Micco-Fonesca*, 410 F.3d 1136, 1141 (9th Cir. 2005); *Wilson v. Johnson*, 535 F.3d 262, 267-68 (4th Cir. 2008); *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 601-03 (6th Cir. 2007). The Third Circuit has rejected that view, holding that *Heck* applies regardless of the availability of the writ of habeas corpus. *Gilles*, 427 F.3d at 210.

[5] For example, the plaintiff in *Swiecicki* was convicted of misdemeanors for violating Cleveland municipal ordinances. *See* Cleveland, Ohio, Codified Ordinances §§ 605.03, 615.08 (2011); *Swiecicki*, 463 F.3d at 492. In *Ngoc-Chi Huynh*, the plaintiffs were convicted of a misdemeanor for violating a Houston ordinance. 2011 WL 6250792, at *6. In *Yeager*, the plaintiff was convicted of a misdemeanor and sentenced to 90 days in jail for violating a San Diego ordinance. 2007 WL 7032933, at *1.

determine whether *Heck* applies to Shahid's convictions, even though they are for civil violations rather than violations of the Crimes Code.

This question is complicated by the manner in which local ordinance violations are prosecuted in Pennsylvania. Although such violations are not "crimes," prosecutions of those violations are criminal proceedings governed by the Pennsylvania Rules of Criminal Procedure where those ordinances provide for "imprisonment upon conviction or upon failure to pay a fine or penalty." *In re Investigating Grand Jury*, 437 A.2d at 1132 (quoting Pa. R. Crim. P. 3(g), (l));[6] *Borough of West Chester v. Lal*, 426 A.2d 603, 605 (Pa. 1981); *see also City of Phila. v. Pennrose Mgmt. Co.*, 598 A.2d 105, 108-09 (Pa. Commw. Ct. 1991). In other words, although the violations are not crimes listed in the Crimes Code, they are treated as criminal violations because they can result in the imposition of criminal penalties. Thus, those prosecuted for violating municipal ordinances that provide for criminal penalties are afforded basic protections available to criminal defendants generally, including those afforded by the Rules of Criminal Procedure and the Constitution. *See Bellisario*, 709 A.2d at 381 (holding that the Pennsylvania Rules of Criminal Procedure apply); *Lal*, 426 A.2d at 605 (holding in a double jeopardy challenge to a prosecution for violating a borough ordinance that "[s]ince the trial court's determination was a criminal proceeding, a verdict of acquittal cannot be reviewed without placing the defendant twice in jeopardy in violation of the constitutional proscriptions." (citing *Sanabria v. United States*, 437 U.S. 54, 64 (1978); *Commonwealth v. Wimberly*, 411 A.2d 1193, 1195 (Pa. 1980))).

Shahid's prosecutions for violating the Borough ordinances were criminal

---

[6] Rule 3 has since been renumbered Rule 103.

7

proceedings. The ordinances provide for "imprisonment upon conviction or failure to pay a fine." *See* Borough of Eddystone, Pa., Code § 97-15 (2006) (providing for a penalty for renting without a certificate of occupancy, and imprisonment for failure to pay that penalty); *id.* § 256-41 (same as to failure to remove snow from sidewalks within twenty-four hours); *id.* § 81-5 (same as to failure to maintain grass or weeds). Consequently, prosecutions under them are governed by the Rules of Criminal Procedure. The Pennsylvania Supreme Court has held that a prosecution for violations of similar municipal ordinances, including for renting an apartment without a certificate of occupancy, is a criminal proceeding. *See Lai*, 426 A.2d at 605.

Applying *Heck* to such convictions comports with the policy underlying the *Heck* doctrine–to promote the finality of criminal convictions and avoid "parallel litigation over the issues of probable cause and guilt . . . ." *Heck*, 512 U.S. at 484 (citation omitted). Regardless of whether the offense is technically classified as civil or criminal, a § 1983 judgment undermining the validity of the conviction would imply that the state's criminal process produced an erroneous outcome. It would imply that the defendant was wrongfully convicted despite the availability of various procedural protections, including the finding of guilt beyond a reasonable doubt. *See Commonwealth v. Nicely*, 988 A.2d 799, 803 n.3, 805 (Pa. Commw. Ct. 2010) (citations omitted). The fact that the offense is technically civil does not change the implication for the state's criminal process. Thus, we determine that *Heck* applies to convictions for civil infractions obtained in criminal proceedings.

District courts considering similar convictions have reached the same conclusion. In *Ference*, the District of New Jersey held that *Heck* applies to convictions for violating municipal ordinances, even though those violations are not defined as "crimes" under New

8

Jersey law. *Ference*, 538 F. Supp. 2d at 790. The court found it sufficient that the convictions were obtained through the criminal process. *Id.* Similarly, the district court in *Acevedo* applied *Heck* to a conviction under a "quasi-criminal" municipal ordinance. 2007 WL 1541881, at *2-3.[7]

 Having determined that *Heck* applies to Shahid's convictions, we must now decide whether the doctrine bars any part of his § 1983 equal protection claim. To determine whether a claim is *Heck*-barred, we engage in a two-part inquiry. We first must determine "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487; *see also Williams*, 453 F.3d at 177. If so, we ask whether the conviction has been overturned or invalidated by an officer or tribunal authorized to do so. *Heck*, 512 U.S. at 486-87; *see also Gilles*, 427 F.3d at 208-09.

Shahid concedes that his convictions were upheld on appeal. Thus, the only question is whether success on his § 1983 claim would "necessarily demonstrate the invalidity" of Shahid's convictions. *Williams*, 453 F.3d at 177 (internal quotations omitted). We must first identify the necessary elements of both Shahid's prior convictions and his § 1983 equal protection claim. *See Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007). We then determine whether any of the issues necessarily litigated in state court prevent Shahid from bringing any of his claims here.

Shahid's convictions for failing to remove snow and for maintaining overgrown grass

---

[7] We note also that *Heck* applies to decisions that, although part of the criminal process, are not themselves criminal convictions. The Supreme Court and Third Circuit have held that *Heck* bars § 1983 challenges to parole decisions that would "necessarily demonstrate the invalidity of the [plaintiff's] confinement or its duration." *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)). *Heck* is concerned generally with protecting the validity of decisions made through a valid criminal process.

or weeds present a straightforward question.  To prove a violation of a municipal ordinance in Pennsylvania, the prosecution needs "only [to] offer evidence of facts establishing that the violation occurred."  *Providence Builders, Inc. v. Commonwealth*, 492 A.2d 488, 489 (Pa. Commw. Ct. 1985).  Therefore, the issues before the state court were whether Shahid had in fact failed to remove snow from the sidewalk and failed to properly maintain the grass and weeds.  In convicting him, the state court necessarily determined that he had.

To prove his equal protection claim, Shahid must show that the Borough intentionally fabricated the citations and gave false testimony in court in order to discriminate against him on the basis of his race, religion or national origin.  *See Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 543-44 (3d Cir. 2011); *Johnson v. Anhorn*, 416 F. Supp. 2d 338, 375-76 (E.D. Pa. 2006) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)).  It is clear that this claim would necessarily imply that the state court's determination of guilt was wrong.  Deciding whether a party's evidence should be believed is the function of the fact-finder.  *Carter v. Hewitt*, 617 F.2d 961, 972-73 (3d Cir. 1980).  To accept Shahid's claim would be to determine that the state court fact-finders improperly credited the Commonwealth's evidence and discredited his.  The result would be two conflicting resolutions of the same question.  *See Zhai v. Cedar Grove Municipality*, 183 F. App'x 253, 255 (3d Cir. 2005) ("Zhai's conspiracy claims under 42 U.S.C. §§ 1985-1986 are based on her allegation that the officers, prosecutor, and judge conspired to bring false charges to secure a release for any civil liability resulting from the incident.  However, these claims are barred, along with her challenges to the guilty plea itself, by [*Heck*].").  The Supreme Court in *Heck* rejected a similar claim, holding that the plaintiff was barred from alleging that he was convicted because officers destroyed

exculpatory evidence. 512 U.S. at 489. Shahid received a full opportunity to be heard in state court and present his claim that the charges against him were fabricated. The trial court rejected that claim, as did the court on summary appeal.[8] Shahid cannot use § 1983 as a vehicle for relitigating those issues.[9]

Shahid's convictions for violating the certificate of occupancy requirement present a more complex question. To prove these violations, the prosecution had to show only two elements: that Shahid was renting an apartment and that he had not obtained a certificate. Shahid clearly cannot now argue that he was wrongly found guilty because Borough officials fabricated the citations and lied in court. Thus, Shahid's claim that he did not violate the ordinance because the Borough prevented him from bringing tenants into the property is *Heck*-barred.

The Borough urges us to decide that Shahid's certificate of occupancy convictions bar his entire claim. The Borough appears to argue that because the state court found Shahid guilty of violating the ordinance, it necessarily determined that the Borough's code inspections and refusal to grant a certificate were not discriminatory. We disagree.

Shahid's entitlement to a certificate and his violation of the certificate requirement are distinct issues. Even if the Borough's denial of a certificate was discriminatory, Shahid was not entitled to disregard the requirement and rent his apartment anyway. *See Poulos*

---

[8] *See* Def.'s Ex. A, at 1-21, Doc. No. 11-4.

[9] Even though Shahid violated the ordinances, the Borough was constitutionally prohibited from treating him differently than similarly situated violators. However, that claim was necessarily resolved by his convictions because selective prosecution is a defense to a criminal conviction in Pennsylvania. *Commonwealth v. Olavage*, 894 A.2d 808, 811 (Pa. Super. Ct. 2006). Because a successful selective prosecution civil claim would render a criminal conviction invalid, a § 1983 plaintiff is barred by *Heck* from challenging his conviction on that basis. *Kramer v. Village of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004).

*v. State of New Hampshire*, 345 U.S. 395, 414 (1953) ("Our Constitution does not require that we approve the violation of a reasonable requirement for a license to speak in public parks because an official error occurred in refusing a proper application.").  The proper avenue was for him to challenge the denial itself.  *Id.*  The state court could have found Shahid guilty of violating the certificate of occupancy ordinance without determining whether he should have been granted a certificate.  Consequently, the fact-finder in this case could decide that the Borough discriminated against Shahid by concocting reasons not to grant him a certificate without impugning the state court's judgment.[10]

Even though Shahid was in violation of the certificate of occupancy ordinance, the Borough was not free to commit the other discriminatory actions Shahid alleges, including fabricating other code violations, threatening to call the police if Shahid did not leave the property, and discouraging prospective tenants from renting from a non-white landlord. *See Hammock v. Borough of Upper Darby*, No. 06-1006, 2007 WL 3232115, at *3 n.5 (E.D. Pa. Oct. 31, 2007) (holding that the plaintiff's state court conviction for interfering with officers did not bar her § 1983 claim of excessive force because "holding otherwise would imply that a police officer could constitutionally pistol-whip any person who physically interfered with his duties, no matter how inconsequentially."); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race."); *Carasca v. Pomeroy*, 313 F.3d 828, 836 (3d Cir. 2002) ("The fact that there was

---

[10] Shahid does not challenge the constitutionality of the certificate requirement or allege that the requirement does not apply to him.  Those challenges would be *Heck*-barred because they are defenses to conviction.

no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law."  (quoting *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002) (internal quotations omitted)); *Johnson*, 416 F. Supp. 2d at 359, 376.  Of course, we expect the Borough to argue at trial that its actions against Shahid, including issuing the inspection report and placing the "uninhabitable" notices, were justified by its duty to enforce the certificate of occupancy requirement.  If that is true, then Shahid's equal protection claim effectively ended with his convictions.  However, it is beyond the scope of our summary judgment review to determine why the Borough took the actions it did.

The Eleventh Circuit in *Dyer v. Lee* declined to apply the *Heck*-bar to an arrestee's § 1983 action for excessive force because the court could not determine, "as a matter of law, that a successful § 1983 suit would necessarily negate the underlying conviction given the facts in the record."  488 F.3d at 883.  Dyer pleaded guilty to resisting arrest arising out of her arrest for driving under the influence.  *Id.* at 882.  She then brought a § 1983 action alleging that the officers had used excessive force in arresting her.  *Id.* at 878.  Self-defense is an affirmative defense to a resisting arrest charge because a person is entitled to "resist the use of excessive force in making an arrest."  *Id.* at 879.  The defendants argued that the conviction barred Dyer's excessive force claim because if the fact-finder in the § 1983 action determined that the police did in fact use excessive force, the verdict would imply that Dyer was entitled to resist the arrest.  *Id.* at 882-83.  The court declined to apply *Heck* because, although the guilty plea clearly implied that some of Dyer's actions during her encounter with the officers were unlawful, it was not necessarily true that the officers did not commit excessive force at some point.  *Id.*  The court explained that "[a] reasonable jury could, without too much trouble, find both that the defendants used

excessive force, and that not all of plaintiff's violent acts were justified as self-defense." *Id.* at 883. Simply put, the court could not determine based on the summary judgment record, without impermissibly making factual findings, that all of the events related to Dyer's encounter with the officers were necessarily part of her guilty plea. *Id.*; *see also Garrison v. Porch*, 376 F. App'x 274, 278 (3d Cir. 2010) ("[T]he fact that Garrison's threatened or attempted use of force was unlawful does not automatically mean that there is no use of force that Porch could have used in response which could have risen to the level of unreasonable and excessive."); *Bush v. Strain*, 513 F.3d 492, 498-99 (5th Cir. 2008) (declining to apply *Heck* where there was a factual dispute concerning whether the plaintiff was injured before or after her resistance ceased).

Shahid's allegations present a similar situation. From the summary appeal docket for each of Shahid's convictions, we know that on January 13, 2011, Shahid failed to remove snow from the sidewalk adjacent to his property;[11] on July 8, 2010[12] and May 3, 2011,[13] he failed to properly tend to grass and weeds; on September 26, 2008,[14] April 29-30, 2009,[15] and March 29, 2010,[16] he rented an apartment in his property without a certificate of occupancy. Whether these violations justified the Borough's other alleged actions is a question to be determined by the fact-finder at trial.

---

[11] Def.'s Ex. A-4, at 15.

[12] *Id.* at 12.

[13] *Id.* at 19.

[14] *Id.* at 2.

[15] *Id.* at 6.

[16] *Id.* at 9.

Another district court recently considered a § 1983 claim similar to Shahid's and held that the entire complaint was barred by a single conviction.  *See Ngoc-Chi Huynh v. City of Hous.*, No. 10-1303, 2011 WL 6250792, at *7 (S.D. Tex. Dec. 12, 2011).  The plaintiffs in *Ngoc-Chi Huynh* alleged that a police officer repeatedly came to their business and each time issued between twenty and sixty fabricated citations.  *Id.* at *1.  During one of his visits, the officer allegedly mocked the plaintiffs' religious beliefs and stated that their beliefs were not helping them.  *Id.* at *2.  During a separate visit, the officer allegedly stated that he would "kick and close all the 'Vietnamese' business owners out of that area."  *Id.* (internal alteration omitted).  The plaintiffs were then convicted of violating a municipal ordinance for failure to clean a ventilation filter.  *Id.*  They alleged that the officer gave false testimony in court, which lead to their conviction.  *Id.*

The district court  dismissed the complaint, holding that the entire action was *Heck*-barred even though the plaintiffs were only convicted of a single offense.  *Id.* at *7.  The plaintiffs alleged in their § 1983 suit that the officer's entire course of conduct was motivated by discriminatory intent.  The court explained that this theory, if successful, would impugn the underlying conviction because it required the plaintiffs to prove that all of the officer's actions, including issuing the citation for which they were convicted, were discriminatory.  *Id.*  If we followed this approach, we would take Shahid's case theory as an indivisible whole and hold that his entire complaint is *Heck*-barred because part of that theory undermines his convictions.

We do not read *Heck* so broadly.  The *Heck*-bar does not apply merely because part of the plaintiff's case theory, if believed, would contradict his convictions.  Rather, we ask whether "a *judgment* in favor of the plaintiff would *necessarily* imply the invalidity" of the

earlier conviction.  *Heck*, 512 U.S. at 487 (emphases added).  In other words, we must
determine whether it is possible for a civil jury to find in the plaintiff's favor based on the
alleged facts without impugning the validity of the prior criminal convictions.  The state
court in *Ngoc-Chi Huynh* determined that the store owners were guilty of the single
violation, but it did not necessarily rule on the propriety of the officer's other actions.  The
§ 1983 jury logically could have found that some of the officer's actions were unjustified
and motivated by a discriminatory intent, *see Vill. of Arlington Heights*, 429 U.S. at 265,
even though the conviction would have been obtained regardless of the plaintiffs' race.
Although the plaintiffs asserted in their § 1983 suit that all of the officer's actions were
discriminatory, the fact-finder was not required to accept or reject the plaintiffs' theory in
its entirety.  Rather, the fact-finder was entitled to consider the evidence and circumstances
surrounding each of the officer's actions and to draw its own inferences from the facts.  It
could have accepted some of the plaintiffs' specific claims that certain actions were
motivated by discriminatory intent while declining to adopt their broad inference that all the
actions were part of the discriminatory scheme.[17]

A judgment in Shahid's favor in this case is similarly reconcilable with his previous

---

[17]  A plaintiff's civil action may be *Heck*-barred, even though his cause of action is theoretically
consistent with his prior conviction, where he makes factual allegations that are necessarily inconsistent with
the conviction.  In *Okoro v. Callaghan*, the plaintiff had been convicted of a drug-related offense following a
seizure of drugs in his home.  324 F.3d 488, 489 (7th Cir. 2003); *see also Okoro v. Bohman*, 164 F.3d 1059
(7th Cir. 1999) (providing additional relevant facts).  He then brought a civil suit alleging that the items seized
by the police were not drugs but gems.  *Okoro v. Callaghan*, 324 F.3d at 489.  While the Seventh Circuit
recognized that his civil suit and criminal conviction were not theoretically inconsistent–he could have been
in possession of drugs and also had his gems stolen–it held that his civil action was *Heck*-barred.  *Id.* at 490.
Because the plaintiff alleged that the police had seized only gems, not drugs, success on his claim for the
return of the gems claim would necessarily imply that his conviction was wrongly obtained.
      Shahid's claims do not present such a case.  In *Okoro*, the plaintiff alleged no facts from which the
civil fact-finder could find an unlawful seizure without impugning the validity of his conviction.  To find in his
favor, the fact-finder would have had to accept his claim that the alleged drugs were actually gems.  Here,
Shahid has alleged facts from which the fact-finder could conclude that some of the actions were
discriminatory even though the convictions were lawful.

convictions.  The fact-finder in this case could examine the facts and circumstances surrounding each Borough action and determine that, even though Shahid's convictions were valid and would have been obtained regardless of his race, religion or national origin, the Borough's other actions were unjustified by its code enforcement duties and were pretext for intentional discrimination.  This is more apparent here than in *Ngoc-Chi Huynh* because Shahid has produced specific evidence to challenge certain Borough actions independent of his convictions.  He has produced evidence, including the reports of private inspectors who allegedly found no violations on the property, to show that Walters's December 2008 report was false.  He also presents evidence about neighboring properties to show that similarly situated white residents whose properties had code violations similar to those in Walters's report were granted certificates of occupancy and were not discouraged from living in the area.[18]

Applying the *Heck*-bar narrowly, we granted summary judgment on the claims relating to the validity of his six convictions.  However, because *Heck* does not bar Shahid from challenging the constitutionality of the Borough's other actions, we denied the summary judgment motion as to his remaining claims.

*Rooker-Feldman*

Even if *Heck* did not apply to Shahid's convictions, *Rooker-Feldman* compels the same result.  The *Rooker–Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

---

[18] Because Shahid has produced evidence specific to Walters's other actions, the facts of this case are distinguishable from those in *Ngoc-Chi Huynh*.  It appears that the plaintiffs in *Ngoc-Chi Huynh* sought to challenge the officer's other citations with the same evidence they presented to defend against their conviction.  Although Shahid alleges that all of the Borough's actions were part of the same discriminatory scheme, some of his evidence applies only to the other actions and not to the convictions.

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). A federal court lacks subject matter jurisdiction over an action seeking to appeal and reverse a state court decision. *Id.* at 283. Therefore, a federal court may not consider a claim that would require either determining that the state court judgment was erroneously entered or reversing it. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005).

*Rooker–Feldman* deprives a federal court of jurisdiction where either: (1) the federal claim was litigated in state court before the federal action was filed; or (2) the federal claim is so inextricably intertwined with the state court adjudication that granting federal relief can only be predicated upon a determination that the state court was wrong. *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009). A federal claim is inextricably intertwined with a state court adjudication when, to grant relief, the federal court must either determine that the state court judgment was erroneously entered or take action that would negate the state court judgment. *Id.*; *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). Thus, a federal court may not entertain a claim that would nullify, if relief were granted, a state court's order. *Id.*

As explained above, Shahid argues that the state court improperly interpreted the evidence before it. He now urges us to reopen the record and determine that he was wrongfully convicted. Shahid essentially is appealing his convictions by means of his § 1983 suit. Under *Rooker-Feldman*, we have no jurisdiction to consider such a claim.

*Rooker-Feldman* does not bar Shahid's other allegations. There is no evidence that any of those allegations were actually litigated in state court. We only know that Shahid was convicted of committing six specific violations on specific dates. Further, those

allegations are not "inextricably intertwined" with the state court convictions. As explained above, the allegations are factually and conceptually distinct from Shahid's convictions. A determination that the Borough committed various other discriminatory actions would not indicate that the prior state court convictions are wrong. *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 421 (3d Cir. 2003) (citing *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 492 (3d Cir. 1997)).


**Conclusion**

*Heck* bars Shahid's challenge to the validity of his state court convictions because a favorable ruling on that claim would create two conflicting resolutions of the issue of Shahid's guilt. That claim is also barred by *Rooker-Feldman* because it is functionally equivalent to an appeal of the state court decision. Thus, we granted the Borough's motion for summary judgment as it pertains to Shahid's allegations that he was unlawfully convicted of violations of Borough ordinances.

We denied the Borough's motion in all other respects because *Heck* does not bar Shahid's remaining allegations. The find-finder reasonably could determine that, even though the convictions were valid, other actions were the result of the Borough's discriminatory intent. Similarly, those allegations are not barred by *Rooker-Feldman* because they would not result in a finding that the convictions were wrong.