**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ABDUS SHAHID** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF EDDYSTONE** | : | **NO. 11-2501** |

### MEMORANDUM OPINION

**Savage, J.**                                                                                      **May 22, 2012**

In this *pro se* civil rights action under 42 U.S.C. § 1983, plaintiff Abdus Shahid claims that the Borough of Eddystone ("the Borough") discriminated against him on the basis of his race, national origin and religion.  He alleges that the Borough deliberately engaged in a nearly four-year-long campaign to prevent him from living in or renting out a property he owned in Eddystone because it did not want a Muslim from Bangladesh owning property in a "white area."  The Borough denies that it violated Shahid's civil rights, contending that Shahid repeatedly violated Borough ordinances and that it properly enforced those ordinances against him.

We previously granted in part and denied in part the Borough's summary judgment motion.[1]  We held that Shahid was barred by the *Heck v. Humphrey* and *Rooker-Feldman* doctrines from challenging the validity of his convictions for violating Borough ordinances.[2] However, we also held that genuine issues of material fact precluded summary judgment on his remaining claim that the Borough denied him a certificate of occupancy and

---

[1] *See* Order, Apr. 26, 2012, Doc. No. 27.

[2] *Id.*

prevented him from renting the property because of his race, religion, and national origin.[3]

A non-jury trial on Shahid's remaining claims was held on May 8, 2012.[4]  Having had the opportunity to observe the demeanor of the witnesses and to assess their credibility, we issued findings of fact.  Based on our review of the evidence, we conclude that Shahid has failed to establish that the Borough discriminated against him on the basis of his race, religion or national origin.  Thus, we shall enter judgment in favor of the Borough and against Shahid.

## Background

Shahid is a naturalized United States citizen and a native of Bangladesh.  On January 26, 2007, he purchased the property located at 1117 Eddystone Avenue, Eddystone, Pennsylvania, for $170,000.  The property is a duplex located in a residential neighborhood.  The property's previous owner, who was white, occupied the entire dwelling as a single-family unit.  After purchasing the property, Shahid rented the building's first and second floors as separate apartments.  He lived and continues to live in Brooklyn, New York, where he owns and manages fourteen apartments.

The premise of Shahid's discrimination claim is that the Borough used its certificate of occupancy requirement and other ordinances to prevent him from living in or renting out the property.  He claims the Borough enforced these laws against him and not against white property owners.

The Borough's certificate of occupancy requirement, Borough Ordinance No. 612,

---

[3] *Id*.; *see also* Mem. Op. 12-15, May 21, 2012, Doc. No. 30.

[4] Shahid requested a non-jury trial in his opposition to the Borough's motion for summary judgment and again in his pretrial memorandum.  *See* Pl.'s Aff. Opp. Summ. J. 1; Pl.'s Pretrial Mem. 8.

requires a property owner to obtain a certificate of occupancy before occupying a property.[5] The requirements are more rigorous for residential rental property than owner-occupied property.  The owner of an owner-occupied residential dwelling is only required to obtain a new certificate of occupancy when there is a change in ownership of the property, or a structural modification or addition to the property is made.[6]  The owner of residential rental property must obtain a new certificate annually for each rental unit.[7]  Additionally, the owner of residential rental property must report annually to the Borough the number of units occupied during the previous year and the names of the tenants in each unit.[8]  The Borough provides a Residential Rental Property Tenant Notification Form for owners to comply with the reporting requirement.  To obtain a certificate of occupancy, a residential rental property must comply with all applicable Borough codes and Commonwealth of Pennsylvania laws and regulations "pertaining to building, plumbing, electrical, zoning, health and safety, fire or fire prevention, [and] minimum housing standards . . . ."[9]  The property may be required to pass an inspection by Borough officials before a certificate is granted.[10]

Shahid never obtained a certificate of occupancy.  He was convicted of renting the property without the required certificate in violation of Ordinance No. 612 in 2009 and again

---

[5] Borough of Eddystone, Pa., Ordinance No. 612, Def.'s Ex. 10, ¶ A(1), (2).

[6] *Id.* ¶ (A)(1)(b), (c).

[7] *Id.* ¶ (A)(1)(a).

[8] *Id.* ¶ (B).

[9] *Id.* ¶¶ (A)(3), (C).

[10] *Id.* ¶¶ (A)(3), (D).

in 2010.  Borough officials conducted inspections of the property on December 23, 2008, February 5, 2010 and September 26, 2011.  Following each inspection, Shahid was issued a report listing numerous violations to be remedied before he could receive a certificate.

### Shahid's Evidence

Shahid testified that from approximately May 30, 2007 until September 7, 2008, he rented one of the units to Joshua Taylor.  According to Shahid, Taylor's mother, whom Shahid identified as a Borough "tax director" or "high-ranking" Borough official, lived with Taylor during that time.  Shahid explains that she was not on the lease because she instructed him not to put her name on it.  He eventually threatened to evict Taylor and his mother because they were four months behind on the rent.  Shahid claimed that just before Taylor and his mother vacated the property, the mother stated specifically that the Borough would not allow a Muslim from Bangladesh to live or own rental property in that area.

Shahid alleged that the next day, September 8, 2008, Dallas Walters, the Borough's Code Official, arrived at the property to conduct another inspection.  Shahid says that when he informed Walters that he planned to move to the property from Brooklyn, Walters informed him specifically that a Muslim from Bangladesh could not live or own property in that neighborhood because it was a "white area."  He alleges Walters warned that the Borough Council knew Shahid's race, religion and national origin, and had a policy against allowing people like him to live in that neighborhood.  Shahid says that Walters then placed notices reading "Keep Out: Uninhabitable" on the property.

Shahid testified that he was unable to rent the property after the September 8, 2008 inspection.  He said that each time he came to the property to perform maintenance work, Walters would quickly arrive and threaten to have Shahid removed by the police.  He

4

testified that whenever he attempted to show the apartments to prospective tenants, Walters would arrive and tell them that they could not rent from Shahid because he was Muslim and from Bangladesh.

Shahid contradicted himself.  After testifying that he did not rent the property after September 8, 2008, he acknowledged that he entered into a month-to-month lease agreement with Dawn Stevenson in 2009.  When confronted, he explained that he was forced to evict Stevenson and refund her money the day after he signed the agreement because the Borough would not allow her to live there.

Shahid testified that the code violations listed in the Borough's inspection reports were fabricated.  He introduced a series of photographs of the property to show that some of the violations listed did not exist.  He also stated that an inspection by the Borough on August 30, 2008 and subsequent inspections by private inspectors revealed no code violations.

### The Borough's Evidence

Walters denied making any comments about Shahid's race, religion or national origin.  He denied that the Borough has ever had a policy of preventing non-whites from living or owning property in any part of Eddystone.

According to Walters, Shahid continuously violated Borough codes and refused to cooperate with Borough officials.  Walters learned that Shahid was renting the property without a certificate of occupancy on September 8, 2008.  He inspected the property on December 23, 2008, at which time there were tenants in both units.  He issued Shahid a report listing 25 violations of health and safety regulations.  He gave Shahid until February 9, 2009 to remedy those violations.

Case 2:11-cv-02501-TJS   Document 31   Filed 05/22/12   Page 6 of 13


On April 30, 2009, after Shahid had failed to schedule a re-inspection as directed, Walters issued him a citation for violating Ordinance No. 612.  After the Court of Common Pleas of Delaware County ordered Shahid to make the property available for a Borough inspection, Walters conducted his second inspection on February 5, 2010.  Walters discovered that Shahid had a tenant renting the first-floor unit.  Following the inspection, he issued Shahid a report listing 34 violations.  Shahid again failed to schedule a re-inspection, and Walters issued another citation for violation of Ordinance No. 612 on March 29, 2010.

Walters conducted a third inspection on September 26, 2011, which was also ordered by the Court of Common Pleas.  He issued Shahid a report listing 28 violations. Shahid was convicted in magisterial district court in 2009 and 2010 of renting the property without a certificate of occupancy in violation of Ordinance 612.  His convictions were upheld on appeal by the Court of Common Pleas.[11]

As a result of numerous complaints about the condition of Shahid's lawn from Laura Dunn, a neighbor whose property abuts Shahid's, Walters cited Shahid on July 8, 2010, May 3, 2011, June 14, 2011 and August 12, 2011 for failing to cut grass and remove weeds on his property.  He also cited Shahid on January 13, 2011 for failing to remove snow from the sidewalk within twenty-four hours.  The Borough corroborated the conditions for which Shahid was cited by producing a series of photographs.

Shahid was convicted in magisterial district court of the July 8, 2010 and May 3, 2011 violations for failing to cut grass and remove weeds, and of the violation for failing to

---

[11] See our memorandum opinion on the application of *Heck v. Humphrey*.  Mem. Op. 2-4, May 21, 2012.

remove snow.  Those convictions were upheld on appeal before the Court of Common Pleas.[12]

John Lyman, the Borough's Residential Building Inspector and Building Code Inspector, issued Shahid his first citation for violating Ordinance No. 612 on September 26, 2008 and participated in the three property inspections with Walters.  He denied that either he or Walters ever commented on Shahid's race, religion or national origin.  He also denied that the Borough had a policy of preventing non-whites from living or owning property in any part of Eddystone.

Karen Reeves, Joshua Taylor's mother, testified that her son lived at 1117 Eddystone Avenue in 2007 and 2008, and that she never lived there.  She has been a Borough councilwoman for eleven years.

## Legal Standard

Shahid brought his complaint pursuant to 42 U.S.C. § 1983.  Section 1983 does not itself provide any substantive rights, but is instead a vehicle for remedying constitutional violations by state and local governments and officers.  *See Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998) (citing *City of Okla. City. v. Tuttle*, 471 U.S. 808, 816 (1985) (plurality opinion)); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Shahid claims that the Borough violated his Fourteenth Amendment right to equal protection by trying to exclude him from Eddystone because he is Muslim and from Bangladesh.  Therefore, Shahid bears the burden at trial of proving by a preponderance of the evidence that the Borough intentionally discriminated against him on the basis of his

---

[12] *See id.*

7

race, religion or national origin.  *See Doe ex rel. Doe v. Lower Marion Sch. Dist.*, 665 F.3d

524, 544 (3d Cir. 2011); *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*,

587 F.3d 176, 196 (3d Cir. 2009).

Shahid cannot satisfy his burden simply by showing that a Borough officer or

employee intentionally discriminated against him.  A government entity cannot be held

liable in a § 1983 suit for the actions of its agents on a theory of respondeat superior.  *Bd.*

*of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)  (citing *Tuttle*, 471 U.S. at 818).

Rather, under the *Monell* doctrine, Shahid must prove that the constitutional violations are

attributable to the deliberate conduct of the Borough itself, such that the Borough was the

"moving force" behind his injuries.  *Id.* at 400 (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*,

436 U.S. 658, 694 (1978)).  To do so, Shahid must show that his injuries were caused by

a discriminatory Borough "policy" or "custom."  *Id.* at 403.  The policy or custom must be

the product of the official action or deliberate indifference of official Borough policymakers.

*Id.* at 403-404, 407.

## Discussion

Shahid's evidence can be organized into three categories: 1) his testimony about

alleged statements of Borough officials acknowledging the existence of a discriminatory

Borough policy; 2) evidence that the Borough's code enforcement activities were pretext

for discrimination; and 3) evidence that similarly situated white property owners were

treated more favorably.

### *Statements About Borough Policy*

Shahid testified that Walters and Taylor's mother told him that the Borough did not

allow non-whites to live or own property in the neighborhood.  Shahid's testimony was not

credible.  We find that these alleged statements were not made.  Shahid did not know Taylor's mother's name, even though he claims to have rented to her for approximately fifteen months.  Nor could he identify her in court.

Although Shahid testified that Walters made his statements to or in the presence of a number of prospective tenants, Shahid could not identify any of those tenants, leaving his rendition of the conversations uncorroborated and eliminating any attempt to cross-examine the tenants.  There is no indication that he reported Walters's statements to the Borough Council or any other government official.  Additionally, Walters's alleged statements, as recounted by Shahid, are unusually and conveniently specific.  Shahid claims that Walters stated that the Borough Council was aware of Shahid's race, religion, and national origin; that it had a policy of preventing such people from living in that area; and that Walters was authorized to implement that policy.  These statements appear calculated to meet Shahid's burden of proof under *Monell*.

### The Borough's Code Enforcement Activities

Shahid alleges that Walters's post-inspection code violations reports were fabricated and that the Borough failed to issue him a certificate of occupancy as part of its discriminatory scheme.  To attack the violations reports, Shahid sought to introduce four inspection "invoices" by independent contractors claiming either that there were no violations or that the conditions giving rise to the violations had been repaired.  However, the contents of these reports are inadmissible hearsay, and Shahid was unable to produce any of the four contractors who completed the reports.[13]  Consequently, we cannot

---

[13] The invoices purport to have been completed by four different inspectors from four different construction companies.  However, it appears that at least three of the four invoices were fabricated.  Those three invoices, each of which found no violations, have similar layouts and features.  For example, the

determine the qualifications of the contractors to opine on code violations or the reliability of the "invoices."

Shahid also claimed that a Borough inspection on August 30, 2007 found no violations.  However, he produced no evidence to confirm that such an inspection was conducted.  Walters denied that anyone from the Borough inspected the property before December 23, 2008.

Shahid also produced a series of photographs purporting to show that some of the violations in Walters's reports were falsified.  He claims that these photographs were taken a week after Walters's December 23, 2008 inspection.  However, there is no way to authenticate the date of these photographs or to support Shahid's assertion that they depict the condition of the property a week before they were taken.  Additionally, they purport to show only a few of the numerous conditions that were the subject of the violations.

Walters testified that Shahid had never submitted a Residential Rental Property Tenant Notification Form.  Owners of residential rental property must submit that form yearly for all of their rental units to receive the annual certificate of occupancy.  Shahid admitted that he did not know if he submitted the form, stating that he only filled out the forms Borough officials gave him.  There is no evidence that he submitted the required form.

*Comparator Evidence About Other Properties*

To show that similarly situated white property owners were treated more favorably

---

company name on each invoice is very similar to that on the others and is written in the same font and in the same format.  Under the company name on each invoice is a list in parentheses of the services the company supposedly provides.  Those services coincide with some of the violations listed in Walters's reports.  The invoices' signature lines are also nearly identical.

than he was, Shahid testified that white owners of neighboring properties were issued certificates of occupancy despite various code violations.  He introduced a series of photographs purporting to depict various violations at those properties.  The photographs were undated.

Shahid also testified that he was treated differently than the previous white owner. He  stated that Walters's December 23, 2008 report listed as violations several conditions that existed prior to Shahid purchasing the property, even though Walters had issued a certificate of occupancy to the previous owner when she sold the property to Shahid.

To substantiate his claim that similarly situated white property owners were treated more favorably, Shahid must prove that: the other properties were owned by white people; certificates of occupancy covering those properties should not have been issued because the properties were in violation of health and safety regulations; and, certificates of occupancy were issued.  Shahid's evidence did not prove any of these three facts.  He produced no evidence that the other properties are owned by white people other than his testimony that he saw white people at the properties.[14]  He could not name any of the owners at trial.  He admitted that he did not search any public records to determine the names of the owners.  Shahid also admitted that he could not identify any other non-white property owners who were discriminated against by the Borough on the basis of race, religion or national origin.

Shahid also does not know whether certificates of occupancy were issued to the owners of the properties.   He baldly asserts that the owners of the other properties

---

[14] To the extent that his knowledge is based on conversations he may have had with neighbors, the evidence is inadmissible hearsay.

11

received a certificate each year despite the violations he observed.  His assertion is based on speculation and his own belief.  It is not supported by any evidence.  It appears that Shahid assumes that every residential property in the Borough must receive a certificate of occupancy each year.  Although residential rental properties require a new certificate annually, owner-occupied properties only require new certificates when there is a change in ownership of the property, or a structural modification or addition to the property is made. Shahid produced no evidence of whether the other properties were rental properties or owner-occupied.  Therefore, he did not prove that the properties, which he contended had code violations, required updated certificates of occupancy.

Shahid cannot say whether the other property owners, including the previous owner of his property, were in violation of the codes applicable to their properties.  In fact, Shahid does not actually know that the other property owners were not cited.  He simply assumes that they were not because he did not see any notices posted on those properties similar to the notices Walters posted on his.  Again, he bases his contentions on his subjective belief, not objective evidence.

Finally, Shahid's claim that Walters treated the previous owner more favorably by granting her a certificate of occupancy omits an important detail–the certificate was issued to both the previous owner and Shahid.  Shahid introduced in evidence a certificate of occupancy for 1117 Eddystone Avenue dated January 12, 2007.  That certificate is signed by Walters and has the previous owner's signature under "Seller" and Shahid's signature under "Buyer."  Although Shahid claims that the Borough would not allow him to own property in that area, his evidence shows that the Borough issued him a certificate of occupancy as the owner of the property.  It was when the property became a rental

12

property that an updated certificate of occupancy was required.

### Conclusion

Shahid has failed to prove that the Borough violated his Fourteenth Amendment right to equal protection. He has produced no credible evidence showing that he was treated differently than similarly situated white property owners. Furthermore, he has not shown that any of the Borough's actions were anything other than genuine attempts to enforce the Borough Code.

Shahid testified that Walters and Taylor's mother stated that the Borough did not want a Muslim from Bangladesh living or owning property in the Borough. Walters and Reeves denied ever having made such statements. Based upon our own credibility assessment, we find no such statements were made.

Shahid also failed to show that the Borough had a discriminatory policy or custom that caused his injuries. He produced no credible evidence that the Borough Council or any other official Borough policymaker enacted a policy restricting non-white landowners from certain neighborhoods. He also failed to show that Borough policymakers were deliberately indifferent to any discriminatory policy or custom, particularly given that he could not identify any other non-white property owners who were discouraged from owning property in Eddystone. *See Simmons v. City of Phila.*, 947 F.2d 1042, 1064 (3d Cir. 1991). Thus, we conclude that the Borough did not violate Shahid's Fourteenth Amendment rights.